UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | | |
|---|---|---|
| IMRE KIFOR, | | **Case No:** |
| Plaintiff, | | |
| v. | | |
| | | |
| THE COMMONWEALTH OF MASSACHUSETTS, | | |
| ATTORNEY GENERAL MAURA HEALY (official capacity), | | |
| COMMISSIONER GEOFFREY SNYDER (official capacity, | | |
| DOR CHILD SUPPORT ENFORCEMENT DIVISION), | | |
| MIDDLESEX PROBATE AND FAMILY COURT, | | |
| BARBARA A. DUCHESNE, | | |
| CYNTHIA S. OULTON, | | |
| Defendants. | | **JURY DEMANDED** |

COMPLAINT FOR INJUNCTIVE/DECLARATORY RELIEF AND DAMAGES:

**Violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*)**

**and 42 U.S.C. §§ 1981 and 1985**

The Plaintiff, Imre Kifor, ("Father"), respectfully alleges, upon personal knowledge, as follows:

## **INTRODUCTION**

1) This case is a tragic, stubbornly child-predatory and deeply child-abusive illustration of the universal truth that "racial engineering[1] does in fact have insidious consequences." Fisher v. University of Texas at Austin, 570 U.S. 297, 331 (2013) (Scalia, J., concurring).

2) Father is a white male legal immigrant (and now a proud U.S. Citizen) who was granted political asylum in 1986 due to his "hated" ethnic minority status from a tyrannical Romania.

---

[1] The "racial engineering" in the herein context is hereby generalized to "social engineering" to also include discriminations based on sex and national origin with the same effects and consequences.

3) Understanding how communist tyrannies work, where authorities enforce rules differently based on the subjects' identity group memberships, Father meticulously collected the records of the long court proceedings in the Middlesex Probate And Family Court, ("Family Court").

4) Father has been systemically defrauded, defamed and stereotypically discriminated against in Family Court using high-conflict "mental health" and other false child-abuse fabrications and frequent demonizing stereotypical proclamations like: "Father is [a barbaric] Romanian."

5) Building on his extensive (now spanning 10+ years) experiences, Father later substantiated his allegations of systemic and sustained "social engineering" rackets by the Defendants with his 332 pages-long Civil RICO complaint[2] duly filed in this U.S. District Court on 7/13/2022.

6) Retaliating against a whistleblower, Family Court has labelled Father "dangerous" and, in an alleged conspiracy to silence and enslave him, engaged in his absolute employment control.

7) The deliberate sabotaging of Father's modifications actions in Family Court, coupled with the allowed and even encouraged endlessly frivolous complaints for contempts against him, have rendered Father absolutely unemployable with now submitted 1,240+ job applications.

8) Father demands an accounting, monetary damages, punitive damages, and equitable relief.

## PARTIES

9) The Plaintiff, Father, is a private U.S. citizen sheltering in Newton, MA, who was defrauded, defamed and discriminated against by the Defendants' conspiracies to silence and enslave.

10) The Defendant Commonwealth of Massachusetts is a state government and Attorney General Maura Healey (in official capacity) is the proper legal representative of the Commonwealth.

---

[2] See Father's Class Action Complaint docketed under 1:22-cv-11141-PBS.

11) The Department Of Revenue, Child Support Enforcement Division , ("DOR") and Family

Court are governmental adjudicatory bodies or agencies. Commissioner Geoffrey Snyder (in

official capacity) is a proper representative of the DOR CSE. A suit against any adjudicatory

body or agency of the Commonwealth is the same as a suit against the Commonwealth.

12) As established below, Father is "joint employee" within the meaning of 42 U.S.C. § 2000e

(f) and Family Court is his "joint employer" within the meaning of 42 U.S.C § 2000e (b).

13) Father's former wife, the Defendant Barbara A. Duchesne, is an individual residing in

Westford, Middlesex County, MA, as her last physical address known by Father.

14) Father's former fiancee, the Defendant Cynthia S. Oulton, is an individual residing in

Concord, Middlesex County, MA, as her last physical address known by Father.

## JURISDICTION

15) This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§

1331 and 1343 because it arises under the laws of the United States and is brought to recover

damages for deprivation of equal rights. Further jurisdiction also exists pursuant to 28 U.S.C.

§§ 2201 and 2202, as well as based on 42 U.S.C. § 1983. Supplemental jurisdiction over

Father's claims made under Massachusetts State law exists pursuant to 28 U.S.C. § 1367.

16) Each and all of the acts (or threats of acts) alleged herein were committed by the Defendants,

or their officers, agents, and employees, under the color and pretense of the statutes, rules,

and regulations of the Commonwealth of Massachusetts. Therefore, this Court has personal

jurisdiction because the Defendants committed the described tortious acts in this district.

## VENUE

17) Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965, 28 U.S.C. § 1391 and

42 U.S.C. § 2000e because the Defendants reside and conduct business in this district and a

substantial part of the events and omissions giving rise to the claims alleged herein occurred

in this district, and because the alleged unlawful joint employment practices were committed

here, and relevant records relevant to those practices are maintained and administered here.

18) Father further states that he has exhausted his administrative remedies and complied with all

statutory prerequisites to his Title VII claims (see the attached EEOC "right to sue" notice).

## UNDERLYING CASES

19) MI07D3172DV1 from Middlesex Probate & Family Court

20) MI11W0787WD and MI11W1147WD from Middlesex Probate & Family Court

21) 1811-RO-147 Lowell District Court

22) 2019-J-0527 and 2020-J-0007 from Single Justice Appeals Court

23) 2020-J-0100, 2020-J-0147, 2020-J-0279, 2020-J-0280 from Single Justice Appeals Court

24) 2021-J-0079 and 2021-J-0080 from Single Justice Appeals Court

25) 2081CV00109, 2181CV00921 and 2281CV02933 from Middlesex Superior Court

26) Paired 2021-P-0503, 2021-P-0901 and 2021-P-0902 from Appeals Court

27) 2021-J-0606, 2021-J-0607, 2022-J-0479 and 2022-J-0480 from Single Justice Appeals Court

28) DAR-28508, DAR-28518 and DAR-28519 from Supreme Judicial Court

29) FAR-28962 and FAR-28963 from Supreme Judicial Court

30) SJ-2022-0041 & SJC-13263 from Supreme Judicial Court

- 4 -

31) SJ-2022-0193 & SJC-13310 from Supreme Judicial Court

32) SJ-2022-0271 & SJC-13339 from Supreme Judicial Court

33) SJ-2022-0380 and SJ-2022-0407 from Single Justice Supreme Judicial Court

34) 1:20-cv-11601-PBS, 1:21-cv-11968-IT and 1:22-cv-11141-PBS from U.S. District Court

## ABSOLUTE JUDICIAL AND SOVEREIGN IMMUNITY

35) Absolute judicial immunity uniformly applies to judges performing judicial acts within their jurisdictions. The protection it affords applies even if the official "acted maliciously and corruptly in exercising judicial functions" or "in the presence of grave procedural errors."

36) "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but rather he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction ,' Bradley v. Fisher, 13 Wall. 335, 351. Pp. 355-357." Stump v. Sparkman, 435 U.S. 349 (1978).

37) "Immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. Bradley v. Fisher, 13 Wall." Mireles v. Waco, 502 U.S. 9, 11-12 (1991).

38) This complaint is restricted to only those judicial acts where a family trial court (therefore lacking appellate jurisdiction) pretended to be an appeals court. Father claims with specificity that "in the nature of certiorari" acts were performed with "complete absence of jurisdiction."

39) Recent petitions submitted to the Supreme Judicial Court, ("SJC"), re: deliberate preclusions and the resulting impossibility of appealing Family Court's acts are attached as affidavits (of inquiries of whether self-abrogation of immunity causes abrogation of sovereign immunity).

## FACTUAL ALLEGATIONS

40) Father has two children with each Defendant Barbara Duchesne, ("Mother-B"), and Cynthia Oulton, ("Mother-C"), from his committed long-term and non-overlapping relationships.

41) Father has been claiming in the above listed cases that systemic and sustained discriminatory conspiracies to silence and enslave him, by ruthlessly and abusively leveraging his dear four children, is behind the punitive and retaliatory actions by the other Defendants, ("The State").

42) The substantiated fraud, deliberate defamation and stereotypical discriminations (specifically including the herein elaborated "joint employment" discrimination) by the Defendants have tormented Father's children and predictably led to their absolute and total parental alienation.

43) Father has alleged that long-term racketeering (see attached Civil RICO complaint) is behind the punitive and retaliatory actions. Moreover, his attached "Affidavit On Judicial Deadlock Leading To Absolute Unemployability" substantiates Father's intractable existential crisis.

44) The key defining claims of the alleged deliberate conspiracies to silence and enslave Father have origins in Family Court allowing the bitterly jealous and vindictive Mothers to collude to simultaneously target Father with false complaints based on documented child-predatory fraud, sustained existential defamations and damaging systemic stereotypical discriminations.

45) The ongoing actions allowed in Family Court have resulted in Father's depleted finances and his forced indigency that started on 2/12/2018 when Family Court initiated a punitive crusade against him in response to his efforts to seek relief. As Father had been alleging documented child-predatory "mental health" fraud, driven by discriminatory "activism" encouraged by the Family Court, Father was labelled "dangerous," duly silenced and then sentenced to jail.

46) Specifically, Father's efforts to seek relief in the various courts can be summarized by his consistently renewed 6 motions requesting to: 1) investigate and stop sustained, systematic and institutionalized child abuse (parental alienation), 2) investigate and stop predatory and fraudulent "mental health" madness, 3) investigate and stop sustained and systematic fraud on the court, 4) investigate "fit to parent" questions and "dangerous to children" allegations, 5) grant relief from "biased, faulty and incomplete" judgments, and 6) permission to publish.

47) Accordingly (and through herculean *pro se* efforts), the forcedly indigent Father has reached the SJC with his consistently renewed petitions. Despite the SJC repeatedly allowing Father's indigency (and thus acknowledging a now existential crisis without any crimes committed on Father's part), the latest denial still notes "it is difficult to discern what, specifically, [Father] is challenging" and claims "[Father] had adequate alternative remedies available to him."

48) Nevertheless, Father has since effectively exhausted all available possible "alternative remedies" (see SJ-2022-0380, SJC-13339 and SJ-2022-0407 attached as *pro se* affidavits).

### Sabotaged Appeals Reviews Are Not Actual Reviews

49) The 10/13/2022 SJC order also notes that "[Father] has pursued several of those avenues, including in the Appeals Court ... That those appeals were not successful — that is, that they did not lead to decisions in [Father's] favor — does not entitle [Father] to additional review. General Laws c. 211, § 3, 'does not provide a second opportunity' for relief."

50) However, the Family Court's specific 6/13/2019, 10/21/2019, 12/6/2019, 1/6/2020, 12/3 and 6/2021, and 1/12/2022 judgments, dismissals and orders have never been reviewed, due to deliberate sabotage, despite Father's timely and properly filed repeated notices of appeals.

51) The Appeals Court's 6/23/2022 order specifically qualifies the scope: "we consider only the appeals from judgments that are properly before us: the denial of [Father's] motion for reconsideration [dated 6/27/2021 and 7/15/2021] in the Probate Court action with [Mother-B]; and the June 4, 2021 order and June 23, 2021 dismissal in the ... action with [Mother-C]."

52) Father's properly requested reviews of the **7 faulty judgments** (all specifically related to his deliberately induced forced indigency) have been deliberately sabotaged by the Family Court and thus the Appeals Court never even considered them despite Father's extensive filings.

53) It is disingenuous for the SJC to then conclude (without any evidence) that Father was "not entitled" for reviews, and to openly insinuate that he had been somehow seeking "a second opportunity" for relief when there is absolutely no record of that "granted" first opportunity.

54) As all of the 7 sabotaged (to be "never reviewed") decisions are based on the Family Court's unfounded conclusive presumption that Father's forced indigency cannot possibly ever exist, any actual and proper appeals reviews would have prevented the now manifested delusion by The State where a now substantiated attempt was made to forcefully extract $100,374.44 from Father's accounts that have been openly and verifiably worth a mere $85.06 since 2017.

### Relevant Financial Background

55) Starting in 2011, Family Court knowingly allowed the two bitterly jealous and vindictive Mothers to collude and simultaneously target Father with false complaints based on child-predatory fraud, sustained defamations and also stereotypical discriminations. At that time Father had been a full-time parent of his twin toddlers for the prior 4 years (see affidavit).

56) Notoriously cruel "activist feminist" profiteering Harvard GALs were allowed to custom fabricate false QAnon-styled sickening and infantile narratives like: "specifically, [child] is

- 8 -

afraid the father will 'put suction cups on her feet and take her out the window,' and [child] is afraid the father would 'put him in boiling water' if he went back in the father's care."

57) Father was not permitted to present his defense of the splintered "one person, divergent sets of facts" reality of the 3 dockets, and parallel judgments were issued on 2/13 and 6/30/2014.

58) After lawsuits ended in 2014, and outside of any judicial context, a deliberate contractual fraud and ultimate defamation occurred, as a clear re-starting point of the current chain-fraud.

59) The sustained existentially damaging effects of this conspiracy between Mothers and Family Court, to silence and enslave Father, have completely depleted his finances by early 2018.

60) Since 2018 Father has been voluntarily offering his extensive and complete evidence to both Mothers and Family Court re: his forced indigency and his thus intractable existential crisis.

61) Family Court immediately initiated a punitive crusade against Father by blocking, ignoring, deflecting, delaying, denying, etc. all of his diligent attempts to prove his innocence and also indigency. Starting on 1/18/2018, Family Court also trapped him into a predictable diversion to the children's schools and the Lowell District Court (see exhibits) for later "consumption."

62) Family Court went to extreme lengths to prohibit Father from filing any of his evidences and calling any of his witnesses, contradicting the superficial claim that he "had his day in court."

63) Family Court openly leveraged the parallel cases to either force Father into involuntary servitude (by ordering him to seek jobs that could not support him in the future) or sentence Father to jail with no intentions to address any of the causes of Father's forced indigency.

64) Specifically, the DOR CSE suspended Father's driver's license while the Family Court kept ordering him to get "minimum wage" jobs. As none of Father's sustained years-long earnest efforts (including his ongoing full-time professional software engineering work) have been

able to solve Father's now extensively documented forced indigency, he has ever diligently

attempted to properly and timely appeal the wrongful stream of interdependent rulings.

65) Family Court's deliberate preclusion of appeals became apparent when Father's first notice

of appeal (filed on 7/1/2019) was flatly ignored by the Family Court. All of Father's now 13

properly submitted notices of appeals were accompanied by signed affidavits of indigences.

66) As Father's affidavits of indigences have been disregarded for years now, Family Court's

official neglect caused his inability to physically move around or his informal "house arrest."

67) Father still has no licenses, has no cash, no car, nor any assets, nor insurances of any kind,

and he continues to be kept under house arrest, rendering Father unable to "earn a living."

68) As a final retaliation, to induce the threatened criminal contempt and to start a chain of

endless jail sentences, Family Court has ordered such interlocking punitive conditions for

Father's "seek work" efforts that prohibited him from engaging in any gainful employment.

69) On 12/6/2021 the Family Court ordered Father to start his employment relationships by

promptly compromising himself with withholding all of his extensive "pending legal issues."

### Joint Employment And Peonage

70) Father's business and property are contextualized and encapsulated by his software startup,

Quantapix, Inc. The June 2011 inception of the one-person company coincides with the start

of the lawsuits in Family Court. Father's injuries to his business or property are tracked by

his corporate records (e-filed in court) proving direct causations other than "market factors."

71) Since 2018 Father has continually and verifiably published his open-source (i.e. "free")

software as a testament of Father's commitment to work and to continue to stay productive.

- 10 -

72) While Father has had a *de facto* full-time software engineer position in his own company (that had been reliably and properly paying payroll and all the ordered insurances for years), Family Court deliberately and specifically denied Father the option to continue with his 30+ year "tradition" in the punitive and obsessive 12/13/2021 and 1/12/2022 "seek work" orders.

73) Family Court then claimed in court that Father was "not an employee," yet it continues to absolutely control all aspects of Father's employment, with a punitive and retaliatory agenda.

74) Father's continued unconditional compliance with all orders of the Family Court (directly confirmed by Family Court on 6/3/2022) have univocally demonstrated that his inability to pay was due to proven unemployability induced by the conspiracy to silence and enslave.

75) Complying with the obsessive "seek work" orders, Father has now submitted 440+ job applications (in addition to the 800+ solicitations in 2019). The received feedback from prospective employers is clear: "you are not judged on technical merits by engineers, you are judged purely on legal merits (and risks) of your open lawsuits, and only by lawyers."

76) As substantiated in Father's attached Civil RICO class action complaint, the racketeering Family Court has become Father's "employer" as a relationship exists between Father and Family Court, where Father is "performing a service" (of him simply being a fabricated "non-custodial parent" fully separated from his children for maximized support amounts) and from which Family Court openly derives a material economic benefit in federal reimbursements.

77) The obsessive "seek work" orders along with the secretive, ambiguous, endlessly fabricated and unreviewable contempt actions are reflective of the Family Court's autocratic intentions to absolutely and fully control not just Father's employment but also his existence, to such a degree that Father would be forced to somehow disobey orders, ending up silenced in jail.

78) The conspiracy to silence and enslave Father, by entrapping and forcing him into an explicit involuntary and unappealable servitude, rendered the "without jurisdiction" Family Court to being the "joint employer" in Father's thus mandated "performing a service" relationship.

79) In the context of Father's full-time software engineering employment with Quantapix, his "service relationship" with Family Court would satisfy the conditions of the independent contractor test pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

80) "The Act defines an 'employee' as 'any individual employed by an employer,' 29 U.S.C. § 203(e)(1). An 'employer' is defined as 'any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ,' Id. § 203(d). The Act further states that the term 'employ' includes 'to suffer or permit to work.' Id. § 203(g)," Baystate Alternative Staffing, Inc., 163 F.3d at 675. Specifically, in the context of the substantiated RICO claims, 1) Father is free from the Family Court's control to collect salary (from Quantapix) as long as a) he is paying the ordered child supports, and b) he is silent about needing appellate reviews, 2) software development has nothing to do with serving as a "non-custodial parent" for federal reimbursements in Family Court's official business, and 3) Father continues to perform in a "professional capacity" for Family Court (as a "white male with children").

81) When initiating the alleged conspiracy to silence and enslave, Family Court then issued orders to **intently tighten** control over Father's employment and existence. As Family Court was only concerned with his "non-custodial parent" services (for federal reimbursements), Father's actual engineering expertise, training, skills, and his 30+ years profession became irrelevant, and he was directly ordered to seek even unskilled, or "minimum wage," jobs.

82) Within the context of Father's fully degraded and degenerated services (i.e., a "non-custodial parent" serving as a mere arbitrarily fabricated, and also falsified, "docket entry" for federal reimbursements), the Family Court has "under the color of law" power and jurisdiction to: 1) "hire and fire" (order or cancel Father's child supports), 2) "supervise and control schedules/ conditions" (of Father's support payments), 3) "determine [and enforce] rate/method" of all payments (colluding against Father with the levying DOR), and to 4) "maintain employment records," (those systemically falsified docket entries as already substantiated by Father).

83) "The court evaluated whether 'chore workers' who provided domestic in-home services were employed jointly by the individual recipients for whom they performed services and the state agency administering the program. In concluding that the chore workers were jointly employed, the court looked in particular to four factors: whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. See Bonnette v. California Health and Welfare Agency, 704 F.2d 1465 (9th Cir. 1983) at 1470," Baystate Alternative Staffing, Inc., 163 F.3d at 675.

84) Father contends that his absolutely controlled "service relationship" with Family Court is independent of any work he could perform (either as a skilled professional or an unskilled laborer) and he has been thus degraded (through years of attrition) to a mere non-custodial parent **male servant** for purposes of Family Court's federal reimbursements worth millions.

85) Father also holds that his deliberately forced circumstances also satisfy the SJC's latest Massachusetts standard for determining "joint employment" service relationship between Father and Family Court, see Jinks v. Credico (U.S.) LLC, No. SJC-13106, and, pursuant to

- 13 -

M.G.L.c. 151B, the now alleged joint employer Family Court has thus deliberately created a child-predatory, strongly discriminatory (per race and sex), and hostile "work environment."

86) In light of Father's incessantly accumulating, and now an impossible **$295,000+** in-arrears ordered child supports/expenses/insurances. Family Court has become Father's not just joint employer but also his true slave master: "When the master can compel and the laborer cannot escape the obligation to go on, there is no power below to redress and no incentive above to relieve a harsh overlordship or unwholesome conditions of work." Pollock v. Williams, 322 U.S. 4, 18 (1944). Specifically, in the context of the now alleged white slavery, "[peonage] may be defined as a status or condition of compulsory service, based upon the indebtedness of the peon to the master. The basal fact is indebtedness" Clyatt v. U.S., 197 U.S. 207 (1905).

## Conspiracy To Silence And Enslave

87) Family Court continues to sabotage Father's complaints for modifications (the 6th wave of parallel complaints were just filed on 10/31/2022) only to force him to stay "in contempt."

88) Specifically, the DOR CSE notified Father once again that having health insurance "is the law." As per Family Court's thus unmodifiable orders, Father is to provide health insurance for his children. The Mass. HealthConnector is ready to provide $0 cost health insurance to both the forcedly indigent Father and his children, as long as they are not listed on any other policies. Both Mothers, however, refuse to cancel the current policies for the children, thus predictably creating a trap for Father to be held in contempt of either the law or the orders.

89) Moreover, accepting any specifically ordered "full-time job" would end Father's indigent status and, per the 1/21/2022 accepted demand (i.e. "Defendant's wages shall be garnished until he pays all outstanding child support owed to Plaintiff"), would force him into the "to

silence and enslave" trap deliberately set by Family Court to finally order the whistleblower

Father to jail. Despite a 12/6/2021 dictum, Father refuses to withhold this projected "the act

of hiring Father would also cause his sentencing" outcome from his prospective employers.

### Induced Forced Indigency

90) "Forced indigency" is an intractable existential state, it is the effective definition of slavery.

91) Family Court has dogmatically rejected the possibility of Father's indigency, apparently to

    circumvent his attempted efforts to appeal the cases. In the 1/12/2022 revised parallel orders,

    Family Court claimed "The Court has made no previous orders of 'forced indigency'," fully

    discrediting Father's disclosures of his financials and his ~800 emailed solicitations for work.

92) Counting on a layman Father having no realistic chances to stay legally afloat (never mind

    ever succeed with the truly complex appeals), Family Court had no need to respect Father's

    existential crisis nor his constitutional free speech, equal protection and due process rights.

93) Father's "incogent" filings were therefore easy to ignore, delay, deny, dismiss, etc. for years,

    and the specifically ordered "in-person" parallel contempt hearings, delayed on purpose to

    12/3 and 6/2021, were staged to muzzle Father at last with endlessly silencing jail sentences.

94) The intent was clear, as Father being physically present in one hearing would have rendered

    him guilty of contempt in the other. A repeat performance of the 10/21/2019 trap of "Father

    diverting $10 from his children to train tickets" would have landed Father in jail once again.

95) Substantiated by Father's attached exhibits and affidavits, the herein controversy therefore

    continues to be fully intractable for the following two reasons: the dogmatic refusal to accept

    Father's forced indigency, now proven by the delusion of attempting to forcefully extract a

truly impossible $100,374.44 when verifiably only $85.06 had existed in Father's accounts, will continue to prohibit Father's prospects for employment due to the "entrapment agenda."

96) Also, any such ongoing refusals will continue to be employment retaliations, which are plain discriminations. Moreover, The State's any material admission to Father's now established forced indigency will immediately invalidate the above "never to be reviewed" prior rulings.

97) Specifically, any official admission of Father's years-long forced indigency would directly refute the SJC's therefore baseless 10/13/2022 conclusion that "[Father] has pursued several of those avenues, including in the Appeals Court ... That those appeals were not successful — that is, that they did not lead to decisions in [Father's] favor — does not entitle [Father] to additional review. M.G.L.c. 211, § 3, 'does not provide a second opportunity' for relief."

98) As all "adequate and effective routes" to remedy Father's intractable existential crisis have been exhausted, until the courts accept the reality of the "effect" (i.e. Father's induced forced indigency) and start to investigate the "causes" (i.e. the racket and conspiracy to silence and enslave), Father will have no sane choice left but to endlessly repeat the current status quo.

### Employment Discrimination Based on Race, Sex and National Origin

99) To forcefully silence Father's whistleblower complaints about the deeply child-predatory abuses, Family Court has been obsessively controlling all aspects of his work and existence.

100) Father was first ordered to pay child support in June 2011, more than 11 years ago. Between then and January 2018, when he approached Family Court to seek modification and relief, he never missed nor was ever late with the ordered ~$5,000 / month obligations for his children.

101) Father has relentlessly maintained in the various courts that he was ready, eager, willing, skilled and capable to earn an income and to support his children. Nevertheless, his forced indigency is still exploited through the endless contempt actions that cannot be appealed.

102) Refusing to investigate the sadistic abuse and emotional torture of children, and to cover-up the institutionalized fraud, defamation and discriminations, Family Court then allowed the children to be suborned only to order Father to "cease all attempts to contact his children."

103) In a narrow context of the above joint employment service relationship with Family Court, Father's only qualifying attribute is that he is a "man who cannot ever get pregnant" (see his attached open letter/affidavit "Dear Pres. Biden: Can Men Get Pregnant?" ) and thus he can be brutally coerced into silence and slavery by simply **stealing** his dear children from Father.

104) An emotionally tortured and thus institutionally blackmailed Father has desperately and also unsuccessfully attempted 1,360 times to call his frightened children, freely on the internet.

105) Upon information and belief, if "men can get pregnant" then Father is clearly handicapped in his joint employment relationship with Family Court, and fully denying his children from him is a direct retaliation pursuant to 42 U.S.C. § 2000e, *et seq.* and M.G.L.c 151B, § 4.

106) Upon information and belief, if "men cannot get pregnant" then the systemic racket Father has substantiated in this U.S. District Court against The State is a direct discrimination based on sex (because men cannot get pregnant or "own" children) and fully denying his children from him is a direct retaliation pursuant to 42 U.S.C. § 2000e, *et seq.* and M.G.L.c 151B, § 4.

## CLAIMS FOR RELIEF

107) The preponderance standard of proof is used in the following short and plain claims.

108) Intent is inferred from Father's already repeatedly filed evidence showing that Defendants facilitated the fraud and gained money or advantage at Father expense. Father's injuries were both factually and proximately caused (the wrongful conduct is a substantial and foreseeable cause and the connection is logical and not speculative) by the also alleged RICO violations.

109) The injured Father has standing and the proximate causes establish the Defendants' legal responsibility for his injuries. This Court is authorized to grant equitable relief to Father with proven injury to his business/property by reason of Defendants' violations of his civil rights.

110) Father is alleging that a systemic and sustained conspiracy to silence and to enslave him is behind the endless retaliatory actions by the Defendants resulting in Father's now fully substantiated forced indigency and absolute unemployability (due to these legal matters)..

111) Father has been consistently claiming that the Defendants have: (1) sabotaged and thus effectively silenced his diligent efforts to modify the underlying family matters due to now evidenced child-predatory fraud, and then (2) retaliated against the forcedly indigent Father to consequently enslave him through endlessly fabricated contempt actions by specifically targeting his ability to be gainfully employed in his profession or to simply "make a living".

112) The now substantiated deliberate conspiracy to silence and enslave Father by Family Court intrinsically relies on violating Father's civil rights. While M.G.L.c. 249, § 4 applies to the state's Superior Court, Father's complaint for violations of his civil rights was still dismissed.

113) Specifically, the Middlesex Superior Court (2181CV00921) specifically noted and ordered on 8/23/2022 that "... As explained at the hearing, this Court has no jurisdiction to consider cases in Probate and Family Court or the Appeals Court. Additionally, even if Superior Court had jurisdiction, those judges acted with immunity for their official actions ..."

114) As Family Court appears to maintain without any basis that Father had been in possession of "hidden" resources ("he had Fidelity accounts"), and thus he had to be forcefully silenced about his repeated whistleblower allegations of fraud, defamation and discriminations, the fundamental controversy of Father's now proven forced indigency has not been addressed.

115) The Mass. Appeals Court (2022-J-0479/0480) ignoring (or concealing) the fundamental controversy of the parallel matters, that the conspiracy to silence and enslave Father has directly caused his thus forced indigency, cannot and will not resolve this existential crisis.

116) Father's rights for free speech (including right "to petition the Government for a redress of grievances"), equal protection and due process have been violated "under the color of law." These systemic violations, also spanning deliberate defamation & discriminations, have been actively perpetrated by Family Court in collusion and outright conspiracy with the Mothers.

117) Mothers have continued to maintain and enforce frivolous public complaints for contempts against Father in Family Court, specifically to conceal and preempt any of Father's attempts to modify the matters due to systemic fraud-on-the-court and stereotypical discriminations.

118) The staggering level of accrued, fraud-based debt and obligations ($295,000+), combined with Father's therefore proven forced indigency renders Father effectively unemployable.

119) Mothers have also continued to effectively repress and torture the children by actively and directly alienating them from their loving Father, as their conspiracy with the racketeering.

120) This is a genuine and profoundly child-abusive, malicious and ruthless controversy between Father and the Defendants as to his entitlement for reconciliation, emotional, personal, and paternal reparation, as well as payment of material damages and deliberately forced losses.

121) Father is entitled to a determination of his rights, including his parental rights, duty, and status under the terms of his acknowledged fatherhood, rightful employability, right to exist, right to earn a living and his right to support his innocent and forcedly fatherless children.

122) Father's business or property (e.g. professional reputation and ability to gain employment) have been directly damaged by the false public allegations about his "mental health," "**rape**," battery, and violence," "child abuse," "financial control," and generic "toxic masculinity."

123) Father's already extensively documented monetary damages and losses are as follows:

| | | |
|---|---|---|
| Property taxes | | $25,125.00 |
| "Shared" house | | $380,603.00 |
| "Big" house | | $1,556,865.00 |
| GALs' expenses | | $55,214.00 |
| "Therapy" expenses | | $157,288.00 |
| "Supervision" expenses | | $56,944.00 |
| Missed income (11 years) | $350K / year | $3,850,000 |
| Missed appreciation (33%) | ($1.5M + $234K) * 33% | $572,000.00 |
| Forced investments | Metrology instruments | $150,000.00 |
| Double taxation | | $65,000.00 |
| "Legal" expenses | $1,265,112 + $836,000 Pro Se | $2,101,112.00 |
| "Survival" expenses | 57 months x $2,836 | $161,652 |
| **Total damages/losses** | | **$9,131,803.00** |

124) Father is therefore claiming that a systemic and sustained conspiracy to silence and enslave him is behind the deliberate retaliatory actions by the Defendants. As substantial injury and sustained injustice incurred during Father's years-long forced indigency, any such conspiracy also constitutes Father's deprivation of liberty based on significant damages to standing in the

community. Father has asserted sufficient facts which support his claims that he is foreclosed

from a "range of opportunities" for employment or for any income by the Defendants' acts.

## CAUSES OF ACTION

## COUNT 1 - VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. 2000e, et seq.) AND 42 U.S.C. §§ 1981 and 1985 (Unlawful Race, Sex And National Origin Discrimination)

125) Father repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

126) Father has filed a charge with the EEOC and has exhausted his administrative remedies.

127) The Defendants have engaged in an intentional, sustained and systematic pattern and/or

practice of discrimination (and/or conspiracy to discriminate against) the predominantly

white and male above elaborated "non-custodial parent" service provider joint employees,

who specifically cannot ever get pregnant and thus cannot effectively "own" their children.

128) The Defendants have engaged in these activities by, among other things:

    a.    Repeatedly violating (and/or conspiring to violate) Father's constitutional free-speech, equal protection and due process rights;

    b.    Continually holding (and/or conspiring to hold) Father in full isolation, under implied house arrest and in a state of deliberately induced forced indigency;

    c.    Repeatedly entrapping (and/or conspiring to entrap) the whistleblower Father in schemes designed to effectively silence and enslave him;

    d.    Repeatedly forcing (and/or conspiring to force) Father into impossible situations where he could be involuntarily held in contempt of either the law or of orders;

129) The Defendants' invidious race, sex and national origin discriminations adversely affected the terms, conditions, and privileges of Father's employment as per his 30+ years profession.

130) The Defendants' discriminatory (and/or conspiratorial) conduct created an intolerable "non-custodial parent" service provider joint employment "working environment" for Father.

131) As a further direct and proximate result of said unlawful joint employment practices, Father suffered the indignity of discrimination and full isolation (e.g. the implicit years-long house arrest), and the continued deliberate invasion of his right to be free from discrimination.

132) As a further direct and proximate result of said unlawful joint employment practices, Father suffered extreme emotional distress, shame, intimidation, humiliation, indignation, isolation, embarrassment, and imminent fear of continued incarceration, silencing and enslavement.

133) The Defendant's discriminatory and unlawful joint employment practices identified in this complaint have been intentional, deliberate, willful, systematic, and conducted in callous disregard of the federally protected rights of Father and in a purposeful conspiracy with the now substantiated systemic and deeply child-predatory racketeering (RICO) schemes. As a result, Father is entitled to compensatory and also punitive damages.

## COUNT 2 - VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. 2000e, et seq.) AND 42 U.S.C. §§ 1981 and 1985 (Unlawful Harassment/Hostile Environment)

134) Father repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

135) The Defendants' policies, practices, routines and acts created an environment heavily charged with racial, sexual and national origin-based discrimination and intimidation. These

policies, practices, routines and acts subjected Father to a racially, sexually and ethnically

hostile life, work and simple mere personal existence environments.

136) As a further direct and proximate result of said unlawful joint employment practices, Father

suffered the indignity of discrimination and full isolation (e.g. the implicit years-long house

arrest), and the continued deliberate invasion of his right to be free from discrimination.

137) As a further direct and proximate result of said unlawful joint employment practices, Father

suffered extreme emotional distress, shame, intimidation, humiliation, indignation, isolation,

embarrassment, and imminent fear of continued incarceration, silencing and enslavement.

138) The Defendant's discriminatory and unlawful joint employment practices identified in this

complaint have been intentional, deliberate, willful, systematic, and conducted in callous

disregard of the federally protected rights of Father and in a purposeful conspiracy with the

now substantiated systemic and deeply child-predatory racketeering (RICO) schemes. As a

result, Father is entitled to compensatory and also punitive damages.

## COUNT 3 - VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. 2000e, et seq.) AND 42 U.S.C. §§ 1981 and 1985 (Retaliation)

139) Father repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

140) When Father complained about the Defendants' racially, sexually and ethnically (national

origin-based) discriminatory policies, practices, routines, acts, and the viciously hostile

environment, the Defendants retaliated against him for his protected civil rights activity.

141) The Defendants took (and/or conspired to take) adverse action against Father with the purpose of concealing and retaliating against him because of his participation in protected activity and Father suffered emotional and material damages as a result of that conduct.

142) As a further direct and proximate result of said unlawful joint employment practices, Father suffered the indignity of discrimination and full isolation (e.g. the implicit years-long house arrest), and the continued deliberate invasion of his right to be free from discrimination.

143) As a further direct and proximate result of said unlawful joint employment practices, Father suffered extreme emotional distress, shame, intimidation, humiliation, indignation, isolation, embarrassment, and imminent fear of continued incarceration, silencing and enslavement.

144) The Defendant's discriminatory and unlawful joint employment practices identified in this complaint have been intentional, deliberate, willful, systematic, and conducted in callous disregard of the federally protected rights of Father and in a purposeful conspiracy with the now substantiated systemic and deeply child-predatory racketeering (RICO) schemes. As a result, Father is entitled to compensatory and also punitive damages.

### DEMAND FOR JURY TRIAL

Father hereby demands trial by jury on all claims so triable.

### PRAYER FOR RELIEF

WHEREFORE, Father prays for relief and judgment as follows:

A)  General and compensatory damages for Father for the violations of his federal statutory rights, and pain and suffering, all according to proof.

B)  Punitive damages, according to proof.

C) A declaration that Defendants, through the actions, omissions, policies, practices, and/or procedures complained of, violate 42 U.S.C. §§ 1981, 1985 and 2000e, *et seq.*

D) Preliminary and permanent injunctive relief requiring the Defendants, its successors in office, agents, employees, and assigns, and persons acting in concert with them, to eliminate policies, customs, and/or practices that discriminate or give preferential treatment to individuals based on race, sex and national origin in the otherwise necessary conditions of the herein elaborated "non-custodial parent" service provider joint employment relationship.

E) Attorneys' fees, costs, interest, and expenses (or *pro se* equivalents) pursuant to 42 U.S.C. §1988 and other relevant statutes.

F) And such other and further relief as the Court may deem proper.

## CERTIFICATION AND CLOSING

145) Under Fed. R. Civ. P. § 11, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

146) I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Signed under the pains and penalties of perjury.

November 8, 2022

Respectfully submitted,
/s/ Imre Kifor
Imre Kifor, Pro Se
32 Hickory Cliff Rd.
Newton, MA 02464
ikifor@gmail.com
I have no phone
I have no valid driver's license
I have to move to a homeless shelter
https://femfas.net

## ADDENDUM TABLE OF CONTENTS

| | |
|---|---|
| Notice Of Right To Sue from EEOC . . . . . . . | 29 |
| Civil RICO Complaint[3] and *pro se* vs. Class Issue (1:22-cv-11141-PBS) . . | 33, 66 |
| 1/19/2018 Original pleadings for relief . . . . . . | 68 |
| Immediate traps to deflect to schools, police and Lowell District Court . . | 71, 81 |
| 11/30/2018 Proofs of filing and the flat denials of the 6 core parallel pleadings . | 85 |
| 6/13/2019 DOR Final Determination Of Delinquency . . . . | 103 |
| 6/13/2019 **Unappealable judgment**, facts, notice of appeal and open letters . | 104 |
| 8/20/2019 Encouragement to file complaints for contempt . . . . | 120 |
| 10/21/2019 Pleadings, open letters, **unappealable judgment** and notice of appeal . | 121 |
| 12/6/2019 Pleadings, **unappealable judgment** and notice of appeal . . | 131 |
| 1/6/2020 Pleadings, **unappealable dismissal** and notice of appeal . . . | 137 |
| 3/8/2020 Pleadings and deliberately induced confusion re: notices of appeals . | 147 |
| 6/4/2021 False claims re: appeals and deliberately staged delay of proceedings . | 152 |
| 6/13/2021 Repeatedly ignored parallel pleadings re: forced indigency . . | 153 |
| 6/23/2021 Staged **unappealable dismissals** of complaints for modifications . | 189 |
| 12/3 & 6/2021 **Unappealable interlocutory orders** re: forced indigency . . | 191 |
| 12/13/2021 & 1/12/2022 Obsessive and punitive "seek work" orders . . | 196 |
| 1/21/2022 Accepted proposed Judgment (to cease all attempts to contact children) | 200 |
| 6/23/2022 Appeals Court order (confirming sabotaged notices of appeals) . . | 204 |
| 8/23/2022 Superior Court order (no jurisdiction for civil rights violations suit) . | 209 |

---

[3] The text only without exhibits, included herein as a *pro se* affidavit.

8/29/2022 String of orders **unappealable by motion** despite forced indigency     .     211

9/2/2022 Interlocutory relief denied (despite inconsistency with forced indigency)     223

9/13/2022 SJC applications for FAR denied (despite sabotaged notices of appeals)     227

9/30/2022 "The kids have been asking to change their name" email     .     .     229

10/13/2022 SJC-13310 order (claiming granted appeals despite forced indigency)     230

10/31/2022 Affidavit of indigency for 6th wave of complaints for modifications     232

    4/27/2022 Letter to MA DOR CSE re: levy of financial accounts     .     .     239

    8/16/2022 Notice from Fidelity re: levy of accounts for **$95,254.68**     .     243

    9/13/2022 Open letter to Fidelity CEO re: levy of accounts .     .     .     244

    10/11/2022 Fidelity disbursement of **$85.06** to MA DOR CSE     .     .     247

    10/13/2022 MA DOR CSE weekly demand for **$100,374.44**     .     .     249

11/2/2022 Renewed health insurance trap email     .     .     .     .     .     250

Father's published resume, "history" and verifiable open-source development work     253

11/8/2022 Job applications for 11/9/2022 (**440+ submitted job applications**) emails     258